Nathan M. Olsen, Esq., ISB # 7373
PETERSEN MOSS HALL & OLSEN
485 "E" Street
Idaho Falls, Idaho 83402
Telephone: (208) 523-4650
Facsimile: (208) 524-3391
E-mail: nolsen@pmholaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATTHEW LEE, a resident of Ada County, <br><br> Plaintiffs, <br><br> vs. <br><br> KAYSE STONE, an individual, TERRY LAKEY, an individual, ADA COUNTY, an Idaho county, CITY OF BOISE, an Idaho municipality, ZANE STONE, an individual, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT** |

Plaintiff, Matthew Lee, for cause of action against the above-named Defendants alleges as follows:

1. Mathew Lee (Lee) is an individual residing in Ada County, Idaho.

2. At all times relevant Defendant Kayse Stone (Kayse) is an officer and employee of the Boise Police Department (BPD), in Boise, Idaho.

3. At all times relevant, Defendant Terry Lakey (Lakey) is a deputy and employee of the Ada County Sheriff's Office (ACSO).

COMPLAINT - 1

4.   Ada County is a county organized and formed in the State of Idaho government, under which the ACSO operates.

5.   The City of Boise is a municipality in the State of Idaho, under which the BPD operates.

6.   Zane Stone (Zane) is an individual, married to defendant Kayse Stone, and all times relevant resides in Boise, Idaho.

7.   Jurisdiction and venue are appropriate in the United States District Court for the State Idaho, as a federal question under 28 USC § 1331, and supplemental jurisdiction under 28 USC § 1367.

## GENERAL ALLEGATIONS

8.   On April 16, 2018, Kayse filed a statement with the ACSO containing numerous false allegations pertaining to Lee.  Among the many falsehoods in the statement, Kayse alleged that Lee had parked his car which she identified only as a "black passenger car" on the street in front of her and Zane's home on three or four occasions, and that Lee sat in the car for 15 or 20 minutes before driving off.  Kayse also falsely stated that Lee had approached her and Zane's home and that Lee tried to "enter the garage code" before Zane "chased (Lee) off."  Kayse also falsely alleged that on April 16, 2018, she and Zane observed Lee parked in front of their house before Lee drove off.

9.   On or about April 16, 2018, Zane provided Kayse with the license plate number for Lee's car, a black Honda Accord.  Lee's car was parked one block away from Kayse and Zane's home in front of the home of a woman that Lee was dating at the time.  While Kayse was working on her shift with the BPD, she ran the license plate number in the system and learned the identity of Lee as the owner of the vehicle.

10. Lee had never met or seen either Kayse or Zane before, and had no idea who they were.

11. Kayse made contact with Lakey, a deputy with the ASCO. On April 18, 2018, Lakey signed and filed a "narrative" under the penalty of perjury which was ripe with numerous and unverified false statements pertaining to allegations of stalking by Lee. Before Lakey had conducted any so-called "investigation" into the claims made by Kayse regarding a parked car, Lakey had decided and in fact informed Kayse that Lee was going to be arrested for stalking.

12. Lakey's investigation into the matter (lasting all of one day), which was assisted if not directed by Kayse in her role as an officer and employee of BPD throughout, was completely one sided and cursory at best, ripe with total fabrications and clearly unsubstantiated facts. Without any corroborating evidence, Lakey surmised that Lee, who was an employee at the Chevron station next to the airport, must have followed Kayse home one time after she had stopped at the gas station while on duty as a police officer at the airport. When Lakey interviewed Lee at Lee's friends place of work, Lakey misrepresented to Lee that Lakey had video confirmation and pictures of Lee stalking Kayse and trying to enter the house and garage. Lakey refused to follow up on any of Lee's alibi's or other evidence provided by Lee showing that the allegations were completely false and unsupported. Rather, the charges against Lee were entirely contrived and baseless.

13. At no point did Kayse or Zane provide Lakey with any precise dates, details, descriptions, pictures, videos, or any other documentation or detail with regard to Kayse and Zane's allegations that Lee had at any point parked in front of their home, approached their home, had met or seen Lee, and many other such false claims. Throughout the entire period that Kayse and Zane were allegedly being "stalked," Kayse was an officer with the BPD and familiar

COMPLAINT - 3

with the elements of the crime of stalking. Yet, as Lakey was fully aware, Kayse had no documentation or evidence whatsoever that any of Kayse and Zane's allegations were true. Nevertheless, based upon Lakey's recommendations and "narrative" as an investigative officer of the ACSO, the Ada County prosecutor filed and pursued charges against Lee.

14. On April 19, 2018, Lee was arrested and booked for a charge of "stalking-second degree" under IC § 18-7906.

15. Kayse and Lakey also obtained a "no contact" and "restraining order" that prevented Lee from coming within a "quarter mile" of Kayse and Zane. Shortly after his arrest and release, pursuant to a false report by Lakey that Lee was "following a school bus," the court ordered that Lee wear an ankle monitor (which Lee had to pay for) – which severely restricted Lee's freedom of movement. Lee was also forced to undergo a psychological evaluation.

16. Lakey and the ACSO also seized Lee's phone, interrogated Lee's employer and his employer's son, and Lee's girlfriend, in which they learned nothing that supported the charges, and which only constituted an intrusion upon Lee's rights and the cause of considerable grief and stress to Lee.

17. On April 22, 2018, Zane posted Lee's "mugshot" and personal driver's license picture on the neighborhood NextDoor App, "informing" his neighbors that Lee was a "stalker that has been following my wife and (13 year old) daughter."

18. In April of 2018, Lee was in the process of a contested custody proceeding with his ex-wife over their six-year old daughter. Upon learning of Lee's arrest, Lee's ex-wife obtained an *Ex Parte* Order from the court on April 25, 2018, removing all visitation and custody rights of Lee's six-year old daughter.

19. On May 7, 2018, the court held a hearing on the Ex Parte custody order wherein both Zane and Kayse gave false testimony. Kayse appeared at the hearing in her BPD uniform. Kayse falsely testified that she did not run Lee's license plate number when she was on duty for the BPD. Rather, she testified that Zane had contacted the Eagle Police Department. This testimony was directly contrary to her written report to the ACSO as well as Lakey's report.

20. Shortly after the May 7, 2018, hearing, Lee's defense attorney advised the Ada County prosecutor and the ACSO of Kayse's false testimony. Lee's attorney also provided the county indisputable information of the numerous other unproven and false allegations with regard to the charges. However, rather than dismiss the charges, Ada County instead amended the complaint to add an additional and unsubstantiated charge of "disturbing the peace."

21. Throughout the spring, summer and fall of 2018, Lee was highly traumatized as a result of the actions of the defendants. His life was dramatically altered. A public radio report incorrectly reported that Lee had plead guilty. Lee was ostracized by friends, family, associates and the public at large. Lee experienced immense emotional distress, grief, and suffering from having to live with what he knew were false charges and the restrictions to his freedoms. Lee was deeply stressed that at any given moment he could be arrested for violating the "no-contact" zone, or any other false or trumped up charge.

22. Lee was not able to have any visitation or contact with his daughter for two weeks, and his daughter was not able to visit his home for six weeks. This separation caused substantial grief and anxiety to Lee.

23. Lee could not visit his girlfriend at her house, which was in the "no-contact" zone. This restriction caused immense strain to their relationship.

24. Throughout the summer and fall of 2018, Lee made several attempts to obtain additional information from the County with regard to the charges which was met with resistance every step of the way.

25. On October 1, 2018, Lee filed a motion to dismiss the charges, noting the numerous false statements of the allegations and the complete lack of information that had been provided by the ACSO and Ada County that would support the charges.

26. Just days before the trial, on October 19, 2018, the Ada County prosecutor dismissed the charges against Lee. However, the charges were not dismissed due to the apparent misrepresentations and lack of factual basis, but rather because Kayse advised the prosecutor she (Kayse) and Zane "decided we didn't want to follow through" with the trial because "the whole thing has been emotionally draining and we are tapped out."

27. At no point during this ordeal, in the course of the investigation, the prosecution, and even the dismissal of the charges against Lee did Ada County and any of its agents give any consideration to the blatant falsehoods and insufficiencies of the claims. Nor did Ada County or its agents give any consideration to harms that were occurring to Lee as a *victim* to what was clearly malicious and false claims pursued by Kayse, Zane and Lakey – which itself constituted a crime. Rather, Ada County was entirely focused upon protecting and promoting the personal interests and objectives of a fellow law enforcement officer over the rights and protection of a common citizen.

28. In December of 2018, Lee filed a complaint with the internal affairs for the BPD with regard to Kayse's conduct as a police officer, and in particular her false statements made under oath. At the beginning of June 2019, Kayse's employment with the BPD ceased. It is unclear whether Kayse was terminated or resigned. However, BPD sent a letter to prosecutors

COMPLAINT - 6

and defendants in 47 other cases that Kayse had testified in indicating that Kayse had made false statements under oath in Lee's matter.

29. BPD failed to provide adequate supervision, procedures or other control measures to prevent its officer and employee from causing harm to Lee.

30. Lee has made numerous attempts with law enforcement to press charges against Kayse for perjury and other potential crimes. Lee has been rebuffed and no charges have been filed. Again, the defendants' approach has been to protect a law enforcement officer over that of a common citizen.

## CAUSES OF ACTION

31. This action arises under the United States Constitution and under federal law, particularly 42 USC § 1983.

32. Lee is a citizen of the United States, afforded certain protections of rights under the United States Constitution and federal law.

33. The defendants Kayse, Lakey, Ada County and BPD individually and/or collectively were acting under the color of the law of the state or were acting outside of the limits of their authority while pretending to act in performance of their official duties.

34. Lee was deprived of certain Constitutionally protected rights, liberties and due process of law resulting from the conduct of the defendants individually and/or collectively.

35. Lee was unlawfully arrested, prosecuted and publicly humiliated for false charges and accusations.

36. Defendants' actions were malicious, willful and intentional.

37. By reason of Lee's illegal arrest and his unlawful detention and restriction of freedoms, Lee was required to and did employ legal counsel to pursue a dismissal of the false charges and did in fact obtain such dismissal.

38. As a direct and proximate cause of defendants' conduct, Lee suffered traumatic, and humiliating short term and life-long mental and emotional anguish and injuries.

39. Defendant Zane communicated information concerning Lee to others that impugned the honesty, integrity, virtue or reputation of Lee or exposed Lee to public hatred, contempt or ridicule.

40. The information was false and Zane knew it was false, or reasonably should have known that it was false.

41. Zane's defamatory conduct constitutes slander and libel per se and therefore Lee is presumed to have suffered damages.

42. Lee is entitled to monetary relief for his injuries caused by defendants in an amount to be determined by the jury, but no less than $750,000 in total.

WHEREFORE, Plaintiff prays for the following judgment and relief against the Defendants as follows:

1. An award of monetary damages for defendants' wrongful conduct in an amount no less than $750,000.

2. An award of his attorney fees and costs.

3. Any other legal or equitable relief as determined appropriate by the Court.

PLAINTIFF DEMANDS A JURY TRIAL FOR ALL ISSUES TRIABLE BY A JURY

DATED this 16th day of April, 2020.

PETERSEN MOSS HALL & OLSEN

/s Nathan M. Olsen
Nathan M. Olsen