UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATTHEW LEE, a resident of Ada County,<br><br>    Plaintiff,<br><br>    v.<br><br>KAYSE STONE, an individual, TERRY LAKEY, an individual, ADA COUNTY, an Idaho county, CITY OF BOISE, an Idaho municipality, and ZANE STONE, an individual,<br><br>    Defendants. | Case No. 1:20-cv-00186-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

Before the Court is Defendants Terry Lakey and Ada County's Motion to Dismiss Amended Complaint Pursuant to FRCP 12(b)(6). *See* Dkt. 27. For the reasons explained below, the Court will grant the motion with leave to amend.

### BACKGROUND

On April 19, 2018, Deputy Terry Lakey arrested Plaintiff Matthew Lee for misdemeanor second-degree stalking. The alleged victims were Defendants Kayse and Zane Stone. At that time, Defendant Kayse Stone was an officer with the Boise Police Department. Lee alleges that Kayse lied to law enforcement about having

**MEMORANDUM DECISION AND ORDER - 1**

been stalked by Lee. The prosecutor eventually dismissed the charges, and Lee then brought this federal action against Kayse Stone, her husband Zane, the City of Boise, Deputy Lakey, and Ada County.

Lee's first complaint alleged a number of theories, including one for false arrest under 42 U.S.C. § 1983. The Court granted Lakey and Ada County's motion to dismiss this claim as to Lakey and Ada County, as Lee had failed to plausibly allege he was arrested in the absence of probable cause.[1] The Court allowed Lee an opportunity to amend, however, because the complaint *suggested* – but did not plausibly allege – that Deputy Lakey had deliberately ignored potentially exculpatory evidence. For example, Lee had alleged that Deputy Lakey "refused to follow up on any of Lee's alibis or other evidence provided by Lee showing that the allegations were completely false and unsupported." *Compl.,* Dkt. 1, ¶ 4. In its dismissal order, the Court observed that "[t]his general allegation is not sufficient to show that Deputy Lakey turned a blind eye to evidence that negated a finding of probable cause. *But if Lee were to provide more specific details regarding the information provided to Lakey, along with when it was provided, he may be able to*

---

[1] The Stones and the City of Boise have answered the amended complaint. *See* Dkt. 31 (K. Stone's Answer and Cross-Claim); 33 (City of Boise's Answer) Dkt. 42 (Z. Stone's Answer). The pending motion concerns only two defendants – Deputy Lakey and Ada County.

**MEMORANDUM DECISION AND ORDER - 2**

*make out a Fourth Amendment violation." Nov. 3, 2020 Order,* Dkt. 21, at 12 (emphasis added).

The Court anticipated that Lee might be able to come forward with specific allegations showing that Lakey had indeed chosen to ignore specific, exculpatory evidence, such as the "alibi evidence" Lee alluded to in his complaint. But Lee has not come forward with such allegations. Not only does the amended complaint drop the previous reference to "alibi evidence," it also fails to allege any other new facts showing that Deputy Lakey ignored exculpatory evidence or, more broadly, that he knew or should have known that the Stones had falsified information about Lee and the alleged stalking.[2] To the contrary, the complaint continues to reveal that Deputy Lakey collected sufficient information to have probable cause to arrest Lee. As such, Lee has failed to plausibly allege a false arrest claim under 42 U.S.C. § 1983. The Court will therefore dismiss the claims against Deputy Lakey and Ada County although Lee will be allowed an opportunity to amend his complaint.

## THE GOVERNING LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under

---

[2] For purposes of this motion, the Court will of course assume the truth of plaintiff's allegations, including the allegations that the Stones lied about Lee having stalked them.

**MEMORANDUM DECISION AND ORDER - 3**

Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact as true and construe them in a light most favorable to the nonmoving party. *Cedars–Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). The court does not need to accept any legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

In his amended complaint, Lee continues to allege that Kayse Stone lied to law enforcement about having been stalked by Lee. He alleges that in a written statement provided to the Ada County Sheriff's Office:

> Kayse alleged that Lee had parked his car which she identified only as a "black passenger car" on the street in front of her and Zane's home on three or four occasions, and that Lee sat in the car for 15 or 20 minutes before driving off. Kayse also falsely stated that Lee had approached her and Zane's home and that Lee tried to "enter the garage code" before Zane "chased (Lee) off." Kayse also falsely alleged that on April 16, 2018, she and Zane observed

MEMORANDUM DECISION AND ORDER - 4

Lee parked in front of their house[3] before Lee drove off.

*Am. Compl.*, Dkt. 25, ¶ 23.

Lee also alleges that on April 17, 2018 – the day after Kayse said Lee's car was parked in front of her home and two days before Lee was arrested – Kayse ran the license plate number and learned that Lee was the owner of the vehicle. ¶¶ 24, 31. Lee alleges that even though he had never met Kayse or Zane, Kayse nevertheless surmised – "[w]ithout any corroborating evidence" – that "Lee, who was an employee at the Chevron station next to the airport, must have followed her home one time after she had stopped at the gas station while on duty as a police officer at the airport." ¶ 25.

In its earlier decision, the Court concluded that Deputy Lakey had probable cause to arrest Lee for misdemeanor stalking based solely on the detailed account Stone had provided. *See, e.g., Tensley v. City of Spokane*, 267 Fed. Appx. 558, 560 (9th Cir. 2008) (*citing United States v. Butler*, 74 F.3d 916, 921 (9th Cir. 1996)) ("A detailed statement from an adult victim witness may itself suffice to establish probable cause."); *Peng v. Mei Chin Penghu*, 335 F.3d 970 (9th Cir. 2003)

---

[3] Although Lee alleges that Kayse falsely reported that Lee's car was parked in front of the *Stone* house on April 16, 2018, Lee has also alleged that on that date, his car "was parked one block away from Kayse and Zane's home in front of the home of a woman that Lee was dating at the time." ¶ 24.

**MEMORANDUM DECISION AND ORDER - 5**

(concluding that a sufficiently detailed victim statement alone sufficed to establish probable cause for the arrest).

Lee's amended complaint does not contain any allegations that would cause the Court to change its earlier conclusion. Most significantly, Lee hasn't added any allegations that Deputy Lakey refused to follow up on the "alibi evidence" Lee mentioned in his first complaint, or that Deputy Lakey was otherwise in possession of exculpatory evidence but chose to ignore it and forge ahead with an arrest. And otherwise, the Court is not persuaded by Lee's varying arguments as to why his newly amended complaint contains facts negating probable cause.

The Court will tick through these new allegations and arguments one by one,[4] beginning with Lee's arguments related to the more detailed timeline that is laid out in the amended complaint.

1. **Timing – Allegations Related to When Deputy Lakey Interviewed the Stones and Received their Written Statements**

In his newly amended complaint, Lee includes a more detailed chronology of the events leading up to his April 19, 2018 arrest. Lee's main objective in including these new allegations is to show that Deputy Lakey arrested first and

---

[4] The Court will not, however, revisit all the arguments and allegations addressed in its earlier decision. *See* Dkt. 21.

**MEMORANDUM DECISION AND ORDER - 6**

asked questions later. Most significantly, Lee argues that Deputy Lakey did not interview the alleged victims or collect written statements from the victims until *after* he arrested Lee. *See, e.g., Response,* Dkt. 36, at 4. The problem with this argument is that allegations in the amended complaint don't bear it out. Granted, the amended complaint alleges that Deputy Lakey *filed* the Stones' written statements (along with his probable-cause affidavit) roughly seven hours after the arrest. But according to the timeline laid out in the amended complaint, Deputy Lakey spoke to Kayse at least twice on April 18 – the day before he arrested Lee. Specifically, Paragraph 13 alleges:

> At approximately 9:00 A.M. on April 18, 2020, Lakey contacted Kayse by text and phone. He did not record the call or any meeting that he had with her for that matter. Presumably during the call, Lakey requested a written statement from Kayse. At 11:19 A.M, Lakey requested that Kayse provide additional information in her written statement, including a number of specifics including times and dates when the alleged incidents of stalking occurred and when Kayse had ever had personal contact with Lee. Kayse responded that she "didn't have many specific dates" and that she was still working on her written statement.

*Am. Compl.* ¶ 13.  Lee has also alleged that before arresting Lee, Deputy Lakey visited Lee's residence and spoke to his mother and visited Lee's employer and interviewed Lee's supervisor and a fellow employee.

The logical inference from these allegations is that Deputy Lakey gathered the relevant facts – that is, the facts this Court has already determined add up to

**MEMORANDUM DECISION AND ORDER - 7**

probable cause – *before* arresting Lee. The timeline laid out in the complaint doesn't make much sense otherwise. For example, why would Deputy Lakey visit Lee's employer at the gas station *before* arresting Lee if he hadn't already learned of Kayse's theory about Lee following her home from that station? And it's not logical to infer that Deputy Lakey connected with Kayse Stone twice the day before the arrest but did not gather *any* information during those contacts. Otherwise, why would he ask her to provide *additional* information in a written statement?[5]

Accordingly, the Court cannot conclude that the new allegations salvage Lee's false arrest claim. In a nutshell, the allegations in the amended complaint still show that Deputy Lakey had probable cause to arrest. Still though, because Lee has *argued* that Deputy Lakey did not have the relevant information in hand when he arrested Lee, the Court will allow him another chance to amend, this time to clarify that Deputy Lakey had not collected the information set out in the written statements before arresting him.

Deputy Lakey, for his part, has said that if the Court considers extraneous

---

[5] The original complaint alleged that "On April 16, 2018 [three days before the arrest], Kayse filed a statement with the ACSO containing numerous false allegations pertaining to Lee." *See Compl.*, Dkt. 1, ¶ 8. *See generally*

**MEMORANDUM DECISION AND ORDER - 8**

material related to *when* he collected the written statements, he has an email showing that he had the written statements from the Stones in hand on April 18, 2018 – the day before he arrested Lee. *See Reply,* Dkt. 38, at 6 ("Deputy Lakey possesses emails sent to him by Kayse Stone on April 18, 2018 (the day before the arrest) with the victims' statements attached."). Of course the Court cannot consider this extraneous information in evaluating the sufficiency of the complaint. But it can consider Lee's arguments in deciding whether to give him a chance to amend. *See Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137 (9th Cir. 2001). Based on Lee's arguments related to the timing of when Deputy Lakey received the relevant information, the Court will allow Lee another chance to amend his complaint.

**2. Motive – Allegations Related to Subjective Intent**

As with this first complaint, Lee's amended complaint continues to allege that Deputy Lakey decided to arrest Lee before investigating the matter. *See, e.g., Am. Compl.* ¶ 20(d) ("Lakey and the ASCO had already pre-determined that Lee would be charged and arrested before any investigation had occurred."). As defendant have pointed out, however, probable cause to arrest is based on an objective standard, meaning that Deputy Lakey's subjective intent is irrelevant. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). The correct focus is

**MEMORANDUM DECISION AND ORDER - 9**

on the facts known to Deputy Lakey at the time of the arrest.

### 3.  Allegations Related to the "One-Sided Investigation"

Lee has also alleged that the "investigation was one sided, unprofessional, undocumented, and clearly with the intent of charges prior to any real gathering of facts." *Am. Compl.* ¶ 20(3). Critically, though, as already discussed, Lee's allegations reveal that Deputy Lakey *did* investigate before he arrested. Among other things, he: (1) spoke to Kayse Stone at least twice; (2) interviewed Lee's mother; (3) visited Lee's place of work and interviewed his supervisor and a fellow employee; and (4) interviewed Lee. And as the Court has previously explained, once probable cause is established, "an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Cameron v. Craig*, 713 F.3d 1012, 1019 (9th Cir. 2013) (citing *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003)). Here, the Court has already concluded that the account Ms. Stone provided to Deputy Lakey was sufficient to establish probable cause. *Order,* Dkt. 21, at 9; *see also Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194 (7th Cir. 1985). The allegations in the amended complaint do not show that Deputy Lakey ignored exculpatory evidence or was otherwise in possession of facts that should have caused him to further investigate. *Cf. Broam v. Bogan*, 320 F.3d 1023, 1032-33 (9th Cir. 2003).

### 4. Statements in the Probable-Cause Affidavit

Lee also points to alleged "falsehoods or unsubstantiated allegations" in Deputy Lakey's probable-cause affidavit. He argues that "[t]he affidavit of probable cause filed with the court was merely an attempt to provide window dressing to wholly unsupportable charges" and that the "affidavit filed with the court is therefore ripe with knowingly false or unsubstantiated statements." *Response,* Dkt. 36, at 11.

Lee first argues that the affidavit contained "[i]nsufficient concrete and specific details to support a stalking charge, including all of the requisite elements under I.D. § 18-7906." *Id.* But, as discussed above and in its earlier order, *see* Dkt. 21, the Court has already that determined Deputy Lakey had probable cause to arrest Lee for second-degree stalking. It is unnecessary to establish probable cause for every element. *See Blankenhorn v. City of Orange,* 485 F.3d 463, 472 (9th Cir. 2007) (citation omitted) ("[b]ecause probable cause must be evaluated from the perspective of 'prudent [people], not legal technicians,' an officer need not have probable cause for every element of the offense.").

Lee next says that in his probable-cause affidavit, Deputy Lakey falsely stated that "'Lee was beginning to get frustrated and requested that we go into his attorney's office to discuss the matter further.'" *Id.* ¶ 18. Lee says this "was a false

statement as corroborated by the recorded interview." *Id*. But even assuming the truth of this allegation, it does not bear on the probable-cause determination. The Court based its probable cause finding on Ms. Stone's account of the stalking, not on Lee's frustration or lack thereof with the interview.

Lee also points out that that when Deputy Lakey filed his probable-cause affidavit, he "misleadingly suggested that Kayse Stone had 'contemporaneously' described Lee in May 2017 when in fact she had never given any description of Lee until after Zane Stone obtained his license plate and she saw his driver's license picture . . . ." ¶ 20(a). Once again, this fact does not negate the alleged facts supporting the probable cause determination. Per the complaint, Kayse assumed Lee was the stalker because she ran his license plates – not because she had identified him by sight. In that regard, the complaint alleges that:

> On or about April 16, 2018, Zane provided Kayse with the license plate number for Lee's car, a black Honda Accord. Lee's car was parked one block away from Kayse and Zane's home in front of the home of a woman that Lee was dating at the time. *While Kayse was working on her shift with the BPD, she ran the license plate number in the system and learned the identity of Lee as the owner of the vehicle.*

*Id*. ¶ 24 (emphasis added).

Finally, Lee again says that in the probable-cause affidavit, Deputy Lakey "misrepresent[ed] that he had video of Lee at Kayse and Zane's residence [and] had concrete dates and times of Lee's alleged nonconsensual contact with Kayse

MEMORANDUM DECISION AND ORDER - 12

and Zane." *Response,* Dkt. 36. The complaint, however, is not as clear as that. That is, the complaint plainly alleges that *during his interview of Lee*, Deputy Lakey *told Lee* that he had videos. *Am. Comp.* ¶ 25. But it's not entirely clear from the complaint whether Deputy Lakey's affidavit goes on to represent *to the state court* that *he* had video. If Deputy Lakey knew there was no video, but told Lee there was video during the interview – that is irrelevant to the probable-cause determination, which focuses on the facts known to Deputy Lakey at the time of the arrest.

But if Deputy Lakey was well aware that there was no video, and nevertheless swore in a probable-cause affidavit that there was one, then it becomes plausible to infer that Deputy Lakey was in on the alleged lie the entire time. In other words, it becomes plausible to infer from that affidavit, filed post-arrest, that even before the arrest Deputy Lakey knew or had reason to know that Kayse or Zane had lied to him about the alleged stalking. In that event, he would not have qualified immunity from suit. *Cf. Chism v. Washington State*, 661 F.3d 380, 393 (9th Cir. 2011) (law was clearly established that officers who submit affidavits for a search warrant that contains statements they know or should know are false violate plaintiff's constitutional right not to be searched and arrested as a result of judicial deception). Accordingly, for this additional reason, the Court will

allow Lee a chance to amend his complaint. Any amended complaint should clarify what Lee has argued – namely that Deputy Lakey knowingly told a state court that *he* had video of the alleged stalking when he, in fact, did not.

### 5. Allegations Related to the Post-Arrest Investigation

Lee's amended complaint also points out that in a post-arrest "supplemental investigation," Deputy Lakey interviewed a witness about the incident and showed that witness a single photo of Lee – rather than a photo array – when asking him to identify Lee. *Id.* ¶ 22. But this occurred *after* the arrest and is irrelevant to the probable-cause determination. Again, in determining whether there are sufficient facts to support probable cause, the relevant focus is upon the facts "known to the officer *at the time of the arrest*." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011) (emphasis added). Second, it is too great an inferential leap to conclude, based upon Deputy Lakey showing a single photo of Lee to a witness, that he must have known Kayse Stone had provided him with a false report of stalking.

### 6. Allegations Related to Deputy Lakey's Violation of a State Statute

Lee also argues that Deputy Lakey arrested him in violation of state limits on arrest authority. More specifically, under Idaho Code § 19-603(6), an officer could potentially arrest a person for misdemeanor stalking – as Lee was – but only

in "immediate response" to the commission of such a crime. The problem, however, is that § 1983 actions against state officers must be based on *federal* constitutional violations – not violation of state statutes. *See Galen v. L.A. County.*, 477 F.3d 652, 662 (9th Cir. 2007) (citation omitted) ("Section 1983 requires [the plaintiff] to demonstrate a violation of federal law, not state law."). Accordingly, the relevant inquiry in this case is whether Deputy Lakey had probable cause to arrest Lee – not whether he was "immediately" responding to the commission of such a crime.

**7. The Claims Against Ada County**

The Court will also grant Ada County's motion to dismiss. As Ada County correctly points out, because plaintiff's allegations establish that Deputy Lakey had probable cause to arrest Lee, there is no underlying constitutional violation and the claims against Ada County thus fail as a matter of law. *See Lacey v. Maricopa County,* 693 F.3d 896, 919 (9th Cir. 2012); *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (*citing Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978)).

**8. The Conditions of Pretrial Release**

Finally, Lee asks for an opportunity to amend his complaint to allege standalone claims based on Deputy Lake's alleged lies related to a school bus.

**MEMORANDUM DECISION AND ORDER - 15**

Lee alleges that Deputy Lakey falsely reported Lee was following a school bus, which resulted in a court ordering him to wear an ankle monitor "which severely restricted Lee's freedom of movement." *Am Comp.,* Dkt. 25, ¶ 27. Lee does not allege a separate constitutional violation based on this conduct – either in his original or first amended complaint. After Ada County and Deputy Lakey moved to dismiss Lee's first amended complaint, the Court issued a supplemental briefing order, asking Lee to address whether he should be allowed to state a separate claim based on Deputy Lakey's alleged fabrication about the school bus for (1) judicial deception under 42 U.S.C. § 1983; (2) unlawful search or seizure, in violation of the Fourth Amendment; or (3) some other constitutional violation. *See Supp. Br. Order,* Dkt. 40, at 2.

In response, Lee argues that he should allowed to amend his complaint to add a "separate Fourth Amendment Unlawful Detainment Claim . . . ." based on the no-contact order, which was to be enforced by an ankle monitor. *Supp. Br.,* Dkt. 44, at 3. In other words, Lee argues that these restrictions effected an unlawful *seizure* under the Fourth Amendment.[6] Additionally, Lee would like to amend his

---

[6] For that reason, the Court will restrict its focus to an analysis of whether the alleged facts will support a claim for an unlawful Fourth Amendment seizure, as opposed to a claim for judicial deception, or a claim based on an unlawful search under the Fourth Amendment.

**MEMORANDUM DECISION AND ORDER - 16**

complaint to state a procedural due process claim against Ada County.

### A. Lee's Proposed Procedural Due Process Claim

The Court will deny Lee's request to amend his complaint to state a procedural due process claim against Ada County. A state-court judicial official issued the no-contact order, and Lee has not adequately explained why Ada County would be a proper defendant for such a claim.

### B. Lee's Proposed Fourth Amendment Claim

Turning first to Lee's proposed Fourth Amendment claim, any such claim is foreclosed by the Ninth Circuit's decision in *Karam v. City of Burbank*, 352 F.3d 1188 (9th Cir. 2003). In *Karam*, a defendant's pretrial release conditions required her to attend her court appearances and get court permission before leaving the state. The Ninth Circuit concluded that although Karam's conditions of release burdened her, they were "de minimus" and did not constitute a seizure under the Fourth Amendment. *Id.* at 1194.

Lee has not addressed the Ninth Circuit's decision in *Karam,* nor has he cited any binding authorities standing for the proposition that requiring someone to wear an ankle monitor, or to abide by a no-contact order, is equivalent to a *detention* or otherwise restrictive enough to be deemed a "seizure" for Fourth Amendment purposes. Accordingly, Lee's request for an opportunity to amend his

complaint to state a "separate Fourth Amendment Unlawful Detainment Claim" will be denied. *See Supp. Br.,* Dkt. 44, at 3.

# ORDER

**IT IS ORDERED that** Defendants Terry Lakey and Ada County's Motion to Dismiss (Dkt. 27) is **GRANTED WITH LEAVE TO AMEND.** Lee may file an amended complaint within 21 days of this Order.

DATED: August 4, 2021

_____
B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 18**