UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATTHEW LEE, a resident of Ada County, | Case No. 1:20-cv-00186-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| KAYSE STONE, an individual, TERRY LAKEY, an individual, ADA COUNTY, an Idaho county, CITY OF BOISE, an Idaho municipality, and ZANE STONE, an individual, | |
| Defendants. | |

**INTRODUCTION**

Before the Court is Defendants Terry Lakey and Ada County's Motion to Strike or, in the Alternative, Dismiss the Second Amended Complaint. *See* Dkt. 49. Also before the Court is Plaintiff Matthew Lee's Rule 56(d) Motion. *See* Dkt. 53.

The Court will grant Lakey and Ada County's motion, in part, in that Lee will not be allowed to proceed with his Second Amended Complaint. That complaint exceeded the scope of the Court's earlier order permitting an amendment. Further, if Lee had sought leave to file the Second Amended Complaint, the Court would have denied the motion. Accordingly, the claims

alleged against Deputy Lakey and Ada County in the Second Amended Complaint will be dismissed, and the Court will moot the pending Rule 56(d) motion. Otherwise, Lee will be permitted to proceed on the *First* Amended Complaint as to the other defendants, as these defendants have already filed answers to that complaint.[1] *See* Dkts. 25, 31, 33, 42.

## BACKGROUND

The Second Amended Complaint is Lee's third attempt to sue Defendant Terry Lakey for wrongful arrest in violation of his Fourth Amendment rights. Deputy Lakey arrested Lee for misdemeanor stalking on April 19, 2018. The alleged victims were Defendants Kayse and Zane Stone. The prosecutor dismissed the charges, and this lawsuit eventually followed. The Court dismissed Lee's first two complaints, both times giving him a chance to amend. Ada County and Deputy Lakey have moved to strike or dismiss the most recent complaint.

The easiest way to understand the various arguments and issues raised in the pending motion is to walk through the first two complaints and corresponding dismissal orders.

---

[1] The City of Boise also filed an answer to the Second Amended Complaint. *See* Dkt. 48. Given the Court's ruling here, though, the Court will consider the prior amended complaint (and the corresponding answers) as the operative complaint in this action.

## 1. Lee's First Complaint

Lee's first complaint provided a significant amount of factual detail regarding the events leading up to his April 19, 2018 arrest for stalking. He alleged that on April 16, 2018 – three days before his arrest – Kayse Stone filed a statement with the Ada County Sheriff's Office containing details about the alleged stalking. Kayse had allegedly identified a black passenger car that had parked on the street in front of her home on three or four occasions. She said Lee had approached her home and tried to enter the garage code but her husband chased him off. She also said she and her husband saw Lee parked in front of their house before driving off. Lee alleged that on April 16, 2018, Zane provided Kayse with the license plate number for Lee's car – a black Honda Accord. Kayse ran the plates that day and learned that Lee owned the vehicle. *Compl.,* Dkt. 1, ¶¶ 8-9. Lee alleged that "without any corroborating evidence," Lakey surmised that Lee, who was an employee at a gas station near the airport, must have followed Kayse home after she had stopped at the gas station while on duty as a police officer. *Id.* ¶ 12.

Lee's first complaint alleged a number of theories, including one for false arrest, brought under 42 U.S.C. § 1983. The Court granted Lakey and Ada County's motion to dismiss, however, because Lee had pleaded so much factual detail related to the arrest that it was apparent Deputy Lakey had probable cause to arrest Lee. *See Nov. 3, 2020 Order,* Dkt. 21, at 7 ("Given this level of detail,

Deputy Lakey had probable cause to arrest Lee.") (citing *John v. City of El Monte*, 515 F.3d 936, 941 (9th Cir. 2008); *Peng v. Mei Chin Penghu*, 335 F.3d 970, 978 (9th Cir. 2003)). Put differently, Lee pleaded himself out of court.

The Court allowed Lee an opportunity to amend the complaint, however, because Lee's complaint suggested – but failed to plausibly allege – that Deputy Lakey had "refused to follow up on any of Lee's alibis or other evidence provided by Lee showing that the allegations were completely false and unsupported." *Compl.*, Dkt. 1, ¶ 4. Given this order, the Court expected that if Lee chose to file an amended complaint, he would provide more detailed allegations regarding Deputy Lakey's alleged "refusal" to follow up on Lee's alleged alibis or other exculpatory evidence. *See* Dkt. 21, at 12; *see generally Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (holding that officers cannot ignore evidence that would negate a finding of probable cause).

### 2.  Lee's First Amended Complaint

Lee filed a first amended complaint, but that complaint completely dropped the reference to the previously alleged "alibi evidence." Additionally, the first amended complaint failed to allege other facts showing that Deputy Lakey had ignored exculpatory evidence or, more broadly, that he knew or should have known the Stones had falsified information about Lee and the alleged stalking. *See Aug. 4, 2021 Order,* Dkt. 46, at 3.  Accordingly, the Court once again dismissed

the complaint as to Deputy Lakey and Ada County because the factual allegations continued to show that Deputy Lakey had probable cause to arrest Lee.

The Court again gave Lee another opportunity to amend, because in defending the motion to dismiss, Lee made a timing argument – he argued that even though his complaint had provided factual detail regarding his arrest, Deputy Lakey had not actually interviewed the victims or collected written statements from them until *after* he had already arrested Lee. *See, e.g., Response,* Dkt. 36, at 4. In other words, according to Lee, Deputy Lakey arrested first and asked the relevant questions later – meaning that he did not have probable cause *at the time he arrested Lee. Aug. 4, 2021 Order,* Dkt. 46, at 9 ("Based on Lee's arguments related to the timing of when Deputy Lakey received the relevant information, the Court will allow Lee another chance to amend his complaint.").

Additionally, in defending the second motion to dismiss, Lee had argued – but had not alleged – that Deputy Lakey knowingly told a state court he had a video of the alleged stalking when, in fact, he did not. For that additional reason, the Court allowed Lee a chance to amend his complaint, stating that "[a]ny amended complaint should clarify what Lee has argued – namely that Deputy Lakey knowingly told a state court that *he* had video of the alleged stalking when he, in fact, did not." *Id.* at 14.

MEMORANDUM DECISION AND ORDER - 5

### 3.  Lee's Second Amended Complaint

Lee then chose to file his Second Amended Complaint, which is the subject of the pending motion. The Second Amended Complaint doesn't say anything about the video discussed in the last round of briefing. Nor does it allege Deputy Lakey received the relevant information from the Stones *after* he arrested Lee. It bears repeating that these were the only reasons the Court permitted Lee an opportunity to amend. Instead, Lee has taken a new approach: He has omitted many of the detailed factual allegations he made in earlier complaints.

Granted, the Second Amended Complaint continues to provide *some* factual detail regarding the arrest: Paragraphs 18 and 19 contain this bare-bones sketch of what happened just before Lee was arrested

> 18.    On or about April 16, 2018, Zane provided Kayse with the license plate number for Lee's car, a black Honda Accord. Lee's car was parked one block away from Kayse and Zane's home in front of the home of a woman that Lee was dating at the time. While Kayse was working on her shift with the BPD, she ran the license plate number in the system and learned the identity of Lee as the owner of the vehicle. Lee had never met or seen either Kayse or Zane before, and had no idea who they were.

> 19.    Without any corroborating evidence, Kayse surmised that Lee, who was an employee at the Chevron station next to the airport, must have followed her home one time after she had stopped at the gas station while on duty as a police officer at the airport.

*Second Am. Compl.*, Dkt. 47, ¶¶ 18-19.

MEMORANDUM DECISION AND ORDER - 6

But this sketch is far less detailed than the factual summary laid out in the previous complaints. Gone are the allegations showing that the Stones had gathered enough information to identify the person driving the black car on April 16, 2018 as being the same person who had previously tried to enter their home. Specifically, Lee no longer alleges Kayse told law enforcement that he had parked his car in front of her home on three or four occasions, sitting there for 15-20 minutes before driving off. Also gone is the allegation that Kayse told law enforcement Lee had previously approached the Stones' home and tried to enter before Zane chased him off. *See Redlined Complaint,* Dkt. 63, at 6 (stricken ¶ 23). And, otherwise, the Second Amended Complaint adds allegations that: (1) Deputy Lakey arrested Lee without first determining whether the Stones had positively identified him as a stalker; (2) Deputy Lakey never spoke to Zane Stone; and (3) Deputy Lakey's probable-cause affidavit contained "knowingly unsubstantiated allegations" that the victims identified Lee as the person who was stalking them. *Second Am. Compl.*, Dkt. 47, ¶¶ 12-17. In other words, Lee is now alleging that Lakey forged ahead with a stalking arrest based solely on the fact, on one occasion on April 16, 2018, Lee's car happened to be parked one block away from their home and that after running his plates and identifying the car, Kayse developed a theory that Lee must have followed her home from a gas station near the airport.

As will be discussed in more detail below, Deputy Lakey and Ada County

object to this latest pleading. Among other things, they say Lee should not be permitted to simply erase troublesome allegations (*i.e.*, those that provided the factual detail showing Lakey had probable cause to arrest) and pretend they were never there, without at least explaining why he is doing so – particularly given the Court's specific and limited reasons for allowing the latest amended complaint.

## ANALYSIS

In the pending motion, Deputy Lakey and Ada County offer four options for the Court: First, they argue that the Court should strike the complaint under Federal Rule of Civil Procedure 12(f) because the newly amended complaint exceeds the scope of the Court's previous order granting Lee leave to amend. Second, they argue that if the Court declines to strike the complaint under Rule 12(f), it should analyze the issue under Rule 15(a)(2) and determine that Lee would not have been permitted to amend. Third, they say that even if an amended complaint were permitted, the Court should nevertheless dismiss it under Rule 12(b)(6). Finally, defendants argue that if the Court is not inclined to enter a Rule 12(b)(6) dismissal, it could convert this motion to one for summary judgment under Rule 56. The Court will decline to strike the complaint under Rule 12(f), but it will deny Lee the opportunity to proceed on the amended complaint because it would not have permitted such an amendment under Rule 15(a)(2). Accordingly, the Court need not reach the arguments raised under Rules 12(b)(6) and 56.

1.      **The Rule 12(f) Motion**

The Court will tackle the Rule 12(f) motion first. A Rule 12(f) motion allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted). Given the text of Rule 12(f), the logical way to analyze defendant's motion is to march through the five categories enumerated in the text of the rule and then determine whether the matter sought to be stricken falls within one of those categories. *See id.*

Defendants do not take this approach. They don't focus on any particular "matter" within the Second Amended Complaint claimed to be "redundant, immaterial, impertinent, or scandalous" and then ask the Court to strike those parts of the complaint. Instead, they ask the Court to dismiss all claims alleged against them under Rule 12(f).

The Court will not deploy Rule 12(f) in this fashion. As just explained, the basic function of Rule 12(f) is to allow the Court to strike matter *in* a claim – not an entire claim. *Cf. GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 101-02 (2d Cir. 2019) (observing that a litigant's use of a Rule 12(f) motion to ask the

court strike a new counterclaim – as opposed to striking matter in the counterclaim – was procedurally improper). As the Ninth Circuit has explained, "Were we to read Rule 12(f) in a manner to allowed litigants to use it as a means to dismiss some or all of a pleading, . . . we would be creating redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose." *Whittlestone*, 618 F.3d at 974.

The Court is aware some district courts have relied upon Rule 12(f) in striking a complaint where the plaintiff has exceeded the scope of an order permitting an amended complaint. *See, e.g., T.J. McDermott Transp. Co. v. Cummins, Inc.*, Civ. No. 14-4209-WHW-CLW, 2017 WL 11476192, at *2 (D.N.J. Jan. 17, 2017) ("Where an amendment has been made impermissibly without leave of the court, Rule 12(f) is the correct instrument with which to correct the complaint."); *Brown v. Stroud*, No. CV08-2348-VRW, 2011 WL 13312050, at *3 (N.D. Cal. Jan. 28, 2011). Defendants rely on one such case in bringing this motion. *See Mtn. Mem.*, Dkt. 49-1, at 5 (citing *Brown*, 2011 WL 13312050, at *3). But, for the reasons explained, the Court is not persuaded that this is a proper use of Rule 12(f). Rather, as the defendants have acknowledged – and because Lee's complaint did, in fact, exceed the scope of the Court's order granting him permission to amend – an appropriate procedural path is to determine whether the

amendments Lee has made would have been permitted under Rule 15(a)(2)[2]. *See Mtn. Mem.,* Dkt. 49-1, at 8. The Court will therefore deny the Rule 12(f) motion and construe the Second Amended Complaint as a motion for leave to amend under Federal Rule of Civil Procedure 15(a)(2).

## 2.    The Rule 15(a)(2) Motion to Amend

Rule 15(a)(2) states that district courts "should freely give leave [to amend a complaint] when justice so requires." Whether to grant a Rule 15(a)(2) motion is, however, within the Court's discretion. *See, e.g., Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). That discretion is guided by various factors, including: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). "[T]he consideration of prejudice to the opposing party carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. Still, though, a strong showing with respect to any one of the other factors may warrant denial of leave to amend. *Sonoma County,* 708 F.3d at 1117. Finally, for each of the listed factors, the party

---

[2] Rule 15(a) provides that although a party may amend its pleading once as a matter of course 21 days after serving the complaint or 21 days after the complaint is attacked with a Rule 12(b), (e), or (f) motion. Any other amendments require the other party's consent or leave of court.

opposing the amendment has the burden of showing that amendment is not warranted. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

## A. Repeated Failure to Cure

Here, the Court finds that defendants have made a strong showing regarding one factor – the repeated-failure-to-cure factor – which itself justifies denying the motion to amend.

Before filing the Second Amended Complaint, Lee had already made two inadequate attempts to plead a false-arrest claim. Further, as discussed above, the Court's first two dismissal orders gave Lee's counsel ample notice of what the Court expected to see in an amended complaint. Yet both times, Lee took an entirely different approach with his amended complaints – discarding factual theories he had argued would allow him to plausibly allege that Deputy Lakey arrested him without sufficient probable cause and coming up with new ones – even to the point of removing crucial allegations without any explanation. *Cf. Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994) (affirming the district court's denial of a plaintiff's motion to file a third amended complaint where, among other things, the plaintiff was not seeking to omit claims but was instead "modifying its allegations in hopes of remedying factual deficiencies in its prior pleadings, even to the point of contradicting its prior pleadings"). And in the

latest, third attempt (the Second Amended Complaint), Lee is essentially returning to a factual theory that is quite similar to the one he relied upon in the first, rejected complaint. That is, the first time around, this Court explained that in the context of his other allegations, Lee could not simply put forward a conclusory allegation that Deputy Lakey knew, or should have known, that the Stones had falsified information. The Court explained that such a bare allegation was insufficient – particularly in light of his other allegations.

In the latest round of briefing, Lee returns to this basic theme. He says perhaps Deputy Lakey actually knew there wasn't sufficient probable cause to arrest, so he coached the Stones regarding what to say in their statements. But the "coaching" allegation is not contained in the amended complaint, and the Court is not persuaded that the other allegations would permit such an inference – even viewing those allegations in Lee's favor. Lee's counsel says he might discover coaching took place if he is given a chance to conduct discovery, but the Court is not persuaded that he has a good-faith basis for making such an allegation at this point. After all, counsel must be able to put forward in any court filing factual allegations that "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *See* Fed. R. Civ. P. 11(b).  The rule does not authorize a fishing expedition.

Based on this record, the Court finds that defendants have made the requisite "strong showing" on the repeated-failure-to-cure factor. As the Ninth Circuit has stated, a district court's discretion is "'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F3d 1124, 1133 (9th Cir. 2013) (citation omitted).

The Court recognizes that Lee may discover facts that will support a claim against Lakey or Ada County during discovery. As this Court has previously observed, regardless of whether Lakey and Ada County are parties in this case, they are likely to participate in discovery because – just to take one example – communications between the Stones and law enforcement are relevant to Lee's claims. *See Dec. 2, 2021 Order,* Dkt. 61, at 3. If Lee develops facts that will support a claim against Lakey or Ada County during discovery, then he may either file a new action to assert those claims or ask this Court for leave to amend the scheduling order in this action to allow him to file an amended complaint to assert those claims. *Cf. United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 7 (D.D.C. 2013) (holding that parties may move to amend to "clarify and amplify" the allegations in their complaint in light of facts learned during discovery); *Parkcrest Builders, LLC v. Housing Authority of New Orleans*, No. 15-1533, 2017 WL 1079164, at *3 (E.D. La. Mar. 22, 2017) (observing that the plaintiff was seeking to amend the complaint "to provide further factual

MEMORANDUM DECISION AND ORDER - 14

allegations derived from recently received discovery, . . . .")

## B. Prejudice

The Court also finds that Deputy Lakey and Ada County will suffer prejudice if Lee is permitted to proceed with his Second Amended Complaint at this time. Prejudice to the opposing party is the "touchstone" of the Rule 15(a) inquiry and, as already noted, carries the greatest weight of the factors listed above. *See Eminence Capital, LLC*, 316 F.3d at 1052.

At this point, Deputy Lakey and Ada County have faced three moving-target complaints, and, ultimately, Lee is primarily saying he needs the opportunity to conduct discovery to develop the factual record regarding a potential false-arrest claim. Under these circumstances, it does not make sense to require Deputy Lakey and Ada County to remain as parties in this litigation. And, on the other hand, denying the motion will have little impact on the plaintiff. As already noted, Lee will presumably move forward with discovery, and if (and only if) he develops facts supporting a false-arrest claim against Deputy Lake or Ada County, he may at that time either file a new action or seek leave to amend his existing complaint. The Court will therefore deny Lee's efforts to proceed on the Second Amended Complaint. Given this ruling, the Court need not address the parties' remaining arguments.

## ORDER

**IT IS ORDERED that:**

(1) Defendants Terry Lakey and Ada County's Motion to Dismiss (Dkt. 49) is

  **GRANTED in part and DENIED in part** as explained above.

(2) Plaintiff Matthew Lee's Rule 56(d) Motion (Dkt. 53) is **DEEMED MOOT.**

(3) Defendant Ada County and Terry Lakey's request for attorneys' fees, *see*

  Dkt. 49, at 19 is **DENIED.**

DATED: February 2, 2022

B. Lynn Winmill
U.S. District Court Judge