UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATTHEW LEE, a resident of Ada County,<br><br>    Plaintiff,<br><br>    v.<br><br>KAYSE STONE, an individual, CITY OF BOISE, an Idaho municipality, and ZANE STONE, an individual,<br><br>    Defendants. | Case No. 1:20-cv-00186-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is the City of Boise's Motion to Dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons explained below, the Court will grant the motion.

# BACKGROUND

## 1. Factual Allegations[1]

On April 19, 2018, Plaintiff Matthew Lee was arrested for misdemeanor

---

[1] The facts stated in this section are drawn from the Amended Complaint, Dkt. 25, which is the operative complaint in this action. The Court denied plaintiff's effort to file the amended complaint filed at Dkt. 47, as this complaint exceeded the scope of the Court's earlier order allowing an amendment.

second-degree stalking. The arresting officer was Deputy Terry Lakey, of the Ada County Sheriff's Office. The alleged victims were Defendants Kayse and Zane Stone. At the time of the arrest, Kayse Stone was an officer with the Boise Police Department. Lee alleges that Kayse lied to law enforcement about having been stalked by Lee. Specifically, he says that in a written statement provided to the Ada County Sheriff's Office,

> Kayse alleged that Lee had parked his car which she identified only as a "black passenger car" on the street in front of her and Zane's home on three or four occasions, and that Lee sat in the car for 15 or 20 minutes before driving off. Kayse also falsely stated that Lee had approached her and Zane's home and that Lee tried to "enter the garage code" before Zane "chased (Lee) off." Kayse also falsely alleged that on April 16, 2018, she and Zane observed Lee parked in front of their house[2] before Lee drove off.

*Am. Compl.*, Dkt. 25, ¶ 23.

On April 17, 2018 – the day after Kayse said Lee's car was parked in front of her home and two days before Lee was arrested – Kayse ran the license plate number and learned that Lee was the owner of the vehicle. ¶¶ 24, 31. Lee says that even though he had never met Kayse or Zane, Kayse nevertheless surmised – "[w]ithout any corroborating evidence" – that "Lee, who was an employee at the

---

[2] Although Lee alleges that Kayse falsely reported that Lee's car was parked in front of the Stone house on April 16, 2018, he has also alleged that on that date, his car "was parked one block away from Kayse and Zane's home in front of the home of a woman that Lee was dating at the time." *Am. Compl.* ¶ 24.

**MEMORANDUM DECISION AND ORDER - 2**

Chevron station next to the airport, must have followed her home one time after she had stopped at the gas station while on duty as a police officer at the airport." ¶ 25.

Lee also alleges that during a preliminary hearing – conducted in May 2017, after he had been arrested – Kayse appeared and falsely testified, saying she had not run Lee's plates while she was on duty for the Boise Police Department, when, in fact, she had been on duty. *See* ¶ 31.

The prosecutor eventually dismissed the charges. Lee then brought this federal action against Kayse Stone, her husband Zane, the City of Boise, Deputy Lakey, and Ada County.

2. **Procedural History**

Defendants Ada County and Terry Lakey have been dismissed from this action. As detailed in earlier orders, the factual allegations contained in the complaint – and in particular the allegations regarding the detailed account Kayse Stone provided law enforcement – demonstrated that Deputy Lakey had probable cause to arrest Lee. *See, e.g., Ewing v. City of Stockton*, 588 F.3d 1218, 1227 (9th Cir. 2009) ("Once he has probable cause, an office is not ordinarily required to continue to investigate or seek further corroboration").

The remaining three defendants – Kayse Stone, Zane Stone, and the City of Boise – answered the complaint. The City of Boise now moves for judgment on the

pleadings under Federal Rule of Civil Procedure 12(c).

## GOVERNING LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(c), a party may for judgment on the pleadings "after the pleadings are closed – but early enough not to delay trial . . . ." Deciding The standard for deciding a Rule 12(c) motion is "functionally identical" to that for deciding a Rule 12(b)(6) motion. *Cafasso ex rel United States v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court is guided by Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

# ANALYSIS

1. **The False Arrest Claim Against the City of Boise Fails Because Lee Alleged Facts Demonstrating that Deputy Lakey Had Probable Cause to Arrest**

Lee alleges a single claim against the City of Boise, for "False Arrest and Detainment." This claim necessarily fails, however, because Lee has not adequately alleged an underlying constitutional violation. That is, based on the facts alleged in the complaint, it is apparent that the arresting officer had probable cause to arrest Lee. The Court will therefore grant the City's motion to dismiss. The Court has addressed this issue more fully in three separate decisions, *see* Dkts. 21, 46, and 64, and will not repeat the analysis here.

2. **In Any Event, Lee Has Failed to Plausibly Allege a *Monell* Claim Against the City of Boise**

Alternatively, the Court will dismiss the claim against the City of Boise on the grounds that Lee has failed to sufficiently allege a *Monell* theory of liability against the City of Boise.

   **A. The Governing Legal Standard related to *Monell* Claims**

Lee brings his claim for "False Arrest and Detainment" against the City under a municipality theory of liability derived from 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of . . . [state law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution

MEMORANDUM DECISION AND ORDER - 6

and laws, shall be liable to the party injured . . .

42 U.S.C. § 1983.

A municipal governmental entity, such as the City of Boise, qualifies as a "person" within the meaning of § 1983. *See Monell*, 436 U.S. at 690. Nevertheless, the City cannot be held liable under § 1983 on a *respondeat superior* theory of recovery merely by virtue of the conduct of its employees. *See, e.g., Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Rather, a municipality may be liable for constitutional torts committed by its officials according to municipal policy, practice, or custom. *See Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000). The Ninth Circuit has broken this standard into four requirements that a plaintiff show to impose municipal liability under § 1983. The plaintiff must show that: (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. *See, e.g., Gordon v. Cty. of Orange,* 6 F.4th 961, 973 (9th Cir. 2021).

In terms of establishing the requisite policy, Lee may seek to do so in one of three ways. First, he may establish that the City acted "pursuant to an expressly adopted official policy." *Id.* (citations omitted). Second, he may establish that the City acted pursuant to a "'longstanding practice or custom.'" *Id.* Third, he may seek to establish that "'the individual who committed the constitutional tort was an

official with final policy-making authority' or that such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* (citation omitted).

### B. Analysis

Here, Lee's *Monell* claim partly relies on the City's alleged customs or practices. Specifically, he alleges that "BPD's violations of [his] . . . constitutional rights occurred pursuant to BPD's established *practices or customs*, in particular, a lack of proper training and protocols to identify bad behavior and the clear and apparent bias and protection afforded to fellow police officers at the expense of the common citizen's constitutional rights." *Am. Compl.* ¶ 88, Dkt. 25 (emphasis added). The problem, however, is that Lee is basing the alleged existence of the offending "practices and customs" on a single incident – BPD's treatment of Defendant Kayse Stone as it relates to his arrest. Generally, however, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *Gordon,* 6 F.4th at 974 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Accordingly, and even assuming there was a constitutional violation, plaintiff's *Monell* claim would fail to the extent he relies on "established practices or customs" as he has failed to allege any other event involving similar conduct or similar constitutional violations.

Lee's would-be *Monell* claim also relies on a ratification theory. Here, he

alleges that "BPD's action were administrative in nature and a *ratification* of Kayse's actions." *Am. Compl.* ¶ 86, Dkt. 25. But as the City correctly points out, the complaint fails to identify who the final policymaker was, or what action constituted the alleged ratification or, or how the actions exhibited deliberate indifference toward Lee.

Both of these deficiencies are fatal to Lee's *Monell* claim. And, more broadly, a review of operative paragraphs of the complaint reveal that the *Monell* allegations are, by and large, a recitation of some buzz word associated with *Monell* claims. *See, e.g., Am. Compl.* ¶¶ 84-89. These sorts of allegations are insufficient. As the Ninth Circuit has explained, plaintiffs seeking to allege a proper claim for relief "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (cleaned up).

In short, Lee's *Monell* claim against the City primarily rests on conclusory allegations. When those conclusory allegations are stricken, there are not sufficient factual allegations to make out a *Monell* claim against the City.

3. **Leave to Amend**

Finally, the Court will exercise its discretion to dismiss the *Monell* claim against the City without allowing leave to amend. This Court typically grants leave

**MEMORANDUM DECISION AND ORDER - 9**

to amend, but granting leave to amend is within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) (*citing Forman v. Davis*, 371 U.S. 178, 182 (1962)). In this case, the Court has already allowed Lee two opportunities to amend his complaint as to Ada County and Deputy Lakey. Granted, Lee was not facing motions to dismiss from the City of Boise, but he has nonetheless had several chances to state a proper false arrest claim against Ada County. *Cf. Destfino v. Reiswig*, 630 F.3d 952, 958-59 (9th Cir. 2011) ("Plaintiffs had three bites at the apple, and the court acted well within its discretion in disallowing a fourth.").

Further, in defending this motion, Lee does not argue that he should be given leave to amend. He does not explain how he would address the deficiencies the City has identified, or how he might allege additional or more specific facts. Also, given the facts alleged thus far, the Court does not see how an amendment could both fix the shortcomings and stay consistent with the facts already alleged. Accordingly, the Court will not grant Lee leave to amend. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (stating that leave to amend may be denied "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." (cleaned up)); *Ryan v. Microsoft Corp.*, 147 F. Supp.

3d 868, 896-97 (N.D. Cal. 2015).

# ORDER

**IT IS ORDERED that** Defendant the City of Boise's Rule 12(c) Motion (Dkt. 67) is **GRANTED**.

DATED: October 4, 2022

_____
B. Lynn Winmill
United States District Judge

MEMORANDUM DECISION AND ORDER - 11