UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATTHEW LEE, a resident of Ada County,<br><br>Plaintiff,<br><br>v.<br><br>KAYSE STONE, an individual, TERRY LAKEY, an individual, ADA COUNTY, an Idaho county, CITY OF BOISE, an Idaho municipality, and ZANE STONE, an individual,<br><br>Defendants. | Case No. 1:20-cv-00186-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Cross-Defendant the City of Boise's Motion to Dismiss Kayse Stone's Cross-Claim. *See* Dkt. 114. The City says Ms. Stone's cross-claims are barred because she failed to comply with the notice provisions in Idaho's Tort Claims Act. *See* Idaho Code §§ 6-901 to 929. That Act requires plaintiffs who wish to pursue claims for damages against governmental entities to file a Notice of Tort Claim within 180 days from the date the claim arose or reasonably should have been discovered. *Id.* § 6-906. The undisputed facts before the Court show that Ms. Stone did not comply with that deadline. Accordingly, the Court will grant the

pending motion, though it will first convert it to a motion for summary judgment because the City presented and relied upon evidence outside the pleadings.

## BACKGROUND

### A. Procedural History

On April 19, 2018, Deputy Terry Lakey of the Ada County Sherriff's Office arrested Plaintiff Matthew Lee for misdemeanor second-degree stalking. The alleged victims were Defendants Kayse and Zane Stone and their young daughter. At the time, Kayse Stone was an officer with the Boise Police Department. The county prosecutor later dismissed the charges against Lee, and Lee then brought this action against the Stones, the City of Boise, Deputy Lakey, and Ada County.

In earlier orders, the Court dismissed the majority of Lee's claims, having concluded that Deputy Lakey had probable cause to arrest Lee. As of this writing, Lee has just one claim remaining—his defamation claim against Zane Stone. Kayse Stone is no longer defending any claims brought by Lee, but her cross-claim against the City of Boise remains pending. Ms. Stone's cross-claim is based on the City's refusal to provide her with a defense or to indemnify her from the claims Lee alleged against her. Trial is scheduled for July 28, 2025.

### B. Facts

The facts relevant to the pending motion are straightforward and

undisputed.[1] Lee sued Kayse Stone and others on April 16, 2020. *See* Dkt. 1. By at least May 1, 2020, Ms. Stone was aware of Lee's complaint, because an attorney acting on her behalf had emailed a copy of the complaint to City of Boise attorneys (with a copy to Kayse), asking whether the City would provide a defense and indemnity for Ms. Stone. *See May 1, 2020 email from Mallet to Sullivan and Muir,* Dkt. 114-3. Within a week, the City responded to that email, clearly indicating it did not to do so:

> The City does not intend to provide Ms. Stone with a defense or indemnity from the claims in the Matthew Lee lawsuit. The alleged wrongful actions of Kayse Stone were not within the course and scope of her employment with BPD. Further, the Complaint alleges that she acted with malice.

*May 8, 2020 email to Mallet, Stone et al.,* Dkt. 114-3.

On June 10, 2020—roughly a month after City attorneys sent this email—Lee caused a copy of his complaint to be formally served on Ms. Stone. *See* Dkt. 11. Ms. Stone filed her cross-claim against the City of Boise 190 days later, on December 17, 2020. *See* Dkt. 31. Ms. Stone had not previously notified the City she intended to pursue any claims against it. She did file a Notice of Tort Claim with the City in November 2019, *see Nov. 19, 2019 Notice of Tort Claim,* Dkt.

---

[1] The parties dispute whether Ms. Stone was acting in the course and scope of her employment, but that dispute is irrelevant to the threshold issue of whether Ms. Stone complied with the 180-day deadline prescribed in Idaho's Tort Claims Act.

MEMORANDUM DECISION AND ORDER - 3

114-5, but that notice did not alert the City of the claims alleged in her cross-claim. Nor could it have, as Lee had not sued her at that point, which of course means the City had not yet declined to defend or indemnify her.

## LEGAL STANDARD

**A. The City's Motion Will Be Converted to a Rule 56 Motion**

The City brings this motion under Federal Rule of 12(b)(1), arguing that the Court lacks subject-matter jurisdiction over Ms. Stone's cross-claims because she failed to comply with the 180-day notice requirement set forth in Idaho's Tort Claims Act. *See* Idaho Code § 6-906. A Rule 12(b)(1) motion is not the appropriate procedural mechanism to raise this issue, however, because the Court plainly has the adjudicatory power to resolve Ms. Stone's cross-claims. Put differently—and perhaps because courts and litigants often refer to this 180-day notice requirement as "jurisdictional"—the City has confused this Court's subject-matter jurisdiction with the viability of Ms. Stone's claims. To be fair, courts and litigants alike are often careless with the word "jurisdictional" when referring to inflexible deadlines. The Supreme Court commented on this problem in another context, observing that "[c]larity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 455

(2004). Here, as noted above, the Court has the adjudicatory power to decide Ms. Stone's cross-claims—even if it's just to conclude that she cannot proceed with them. Nobody is seriously contending otherwise, so the Court concludes that a Rule 12(b)(1) motion is not the correct procedural move here.[2]

At least one Idaho Supreme Court case—*Dodge v. Bonners Ferry Police Department*, 450 P.3d 298, 304 (Idaho 2019)—supports the notion that a Rule 12(b)(6) motion is appropriate where defendant asks the Court to dismiss a complaint based on a failure to comply with the notice requirements of Idaho's Tort Claims Act. In *Dodge,* the trial court granted a motion brought under Idaho Rule of Civil Procedure 12(b)(6),[3] and the Idaho Supreme Court affirmed. *See id.* at 302. Other Idaho courts have resolved the same issue in the context of ruling on motions for summary judgment. *See, e.g., Ware v. City of Kendrick,* 487 P.3d 730, 732 (Idaho 2021) (affirming grant of summary judgment on negligence claim

---

[2] The Court is aware of some cases in this district concluding that "the Rule 12(b)(1) standard" applies to motions based on a plaintiff's failure to comply with the ITCA's notice provisions. *See Coy v. Ada Cnty.,* No. 1:23-cv-144-AKB, 2023 WL 6623633, at *4 (D. Idaho Oct. 10, 2023); *Morgan v. Ada Cnty. Sheriff's Dep't,* No. 1:22-cv-318-AKB, 2023 WL 4684893, at *4 (D. Idaho July 21, 2023); *Turner v. City of Coeur d'Alene*, No. 2:21-cv-144-DCN, 2021 WL 5761084, at *5 (D. Idaho Dec. 3, 2021). For the reasons explained in this opinion, the Court disagrees.

[3] Like *Federal* Rule of Civil Procedure 12(b)(6), *Idaho* Rule of Civil Procedure 12(b)(6) provides that a party may assert a motion to dismiss based on a "failure to state a claim upon which relief can be granted."

MEMORANDUM DECISION AND ORDER - 5

where plaintiff failed to comply with Idaho Code § 6-906); *Bliss v. Minidoka Irrigation Dist.,* 468 P.3d 271, 283-84 (Idaho 2020) (affirming grant of summary judgment on emotional distress claim where plaintiff failed to comply with Idaho Code § 6-906).

Having considered these authorities, the Court concludes that a litigant seeking dismissal based on a plaintiffs' alleged failure to comply with Idaho Code § 6-906 should file a motion to dismiss under Rule 12(b)(6) or motion for judgment on the pleadings under Rule 12(c) (if they intend to rely solely on the pleadings) or a motion for summary judgment under Rule 56 (if they intend to rely on evidence outside the pleadings). Here, the City relied on extraneous evidence, so the Court will convert the pending motion to a motion for summary judgment. Further, the Court finds that formal notice before converting the motion is not required because both parties have had a full and fair opportunity to ventilate the issues raised in the City's motion. *See In re Rothery,* 143 F.3d 546, 549 (9th Cir. 1998). The factual issues are straightforward, and Ms. Stone did not object to the City's submission of the extraneous evidence. Indeed, she relied on some of that evidence in arguing that the motion should be denied. *See, e.g., Response,* Dkt. 115, at 4 (discussing the November 2019 Notice of Tort Claim, which the City submitted in support of its motion); *id.* at 5 (discussing an email exchange between her counsel and the city, which, again, the City submitted in support of its motion).

MEMORANDUM DECISION AND ORDER - 6

## B. The Standard Governing Rule 56 Motions

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any material fact—a fact "that may affect the outcome of the case." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the non-moving party and the Court must not make credibility findings. *Id.* at 255. Once the moving party has met its burden, the non-moving party carries the burden to present evidence showing there is a genuine issue for trial. *Celotex*, 477 U.S. at

323. The non-moving party must go beyond the pleadings and show through "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Id.* at 324.

## ANALYSIS

Kayse Stone's crossclaims arise out of the City of Boise's refusal to provide her with a defense to and indemnification from the claims Lee alleged against her. As noted above, the City says these crossclaims are barred because Ms. Stone failed to comply with the notice requirement in the Idaho Tort Claims Act ("ITCA"). "The ITCA provides that 'no claim or action shall be allowed against a governmental entity or its employee unless the claim has been presented and filed within the time limits prescribed by this act.'" *Dodge*, 450 P.3d at 303 (quoting Idaho Code § 6-908). Section 6-906 of the ITCA prescribes the applicable time limit, requiring notice be filed with the county clerk "within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later." Idaho Code § 6-906. The failure to file within the ITCA time limitation acts as a bar to any further action. *Dodge*, 450 P.3d at 303. Even at the motion-to-dismiss stage, plaintiffs bears the burden of proving they complied with the ITCA's notice requirement. *Id.*

Ms. Stone says this deadline does not apply to her because she is not asserting "claims" for "damages." The Court disagrees. Ms. Stone has alleged

MEMORANDUM DECISION AND ORDER - 8

three "claims" against the City, for "Indemnity;" "Declaratory Relief;" and "Contribution." *Answer & Cross-Claim*, Dkt. 31, at 13-15. In her prayer for relief, she seeks, among other things: (1) a declaration as to the City of Boise's "rights and duties," (2) an order directing the City of Boise to indemnify her for "any and all settlements or compromises and/or judgments" she enters into as a result of this action; and (3) "attorney's fees, court costs, investigative costs and other expenses" she incurs in defending herself in Mr. Lee's lawsuit against her. *See id.* at 15-16.

These claims plainly arise under § 6-903(2) of the ITCA, which obligates governmental entities to provide a defense and to indemnify their employees when those employees are named as defendants in "claims … related to the course and scope of employment . . . ." Idaho Code § 6-903(2). Each of Ms. Stone's cross-claims is based on the same core allegation—namely that the City breached its statutory duty to defend and indemnify her. Based on a plain reading of the relevant ITCA provisions, then, Ms. Stone cannot pursue her claims because she did not give the City 180 days' advance notice that she planned to sue. The obligation to provide this notice is set forth in Idaho Code § 6-906, which states:

> All claims against a political subdivison [subdivision] arising under the provisions of this act … shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later.

Idaho Code § 6-906.

MEMORANDUM DECISION AND ORDER - 9

As noted above, Idaho courts have repeatedly held that this 180-day notice requirement is inflexible—meaning that if a litigant does not comply with the deadline, she may not proceed with her claim. *See, e.g., Ware,* 487 P.3d at 732; *Bliss,* 468 P.3d at 283-84; *see also Butler v. Elle,* 281 F.3d 1014, 1029 (9th Cir. 2002) (affirming dismissal of claims because plaintiff filed tort claim after filing complaint).

Ms. Stone fails to allege any facts establishing that she timely complied with the ITCA's notice requirement. And the declarations submitted by the parties bear out this failure, demonstrating that by at least June 10, 2020: (1) Lee had sued Stone; and (2) the City had informed Ms. Stone it had no intention of providing her with a defense or indemnifying her. Even assuming Ms. Stone's cross-claim could serve as the requisite notice, she did not file it until December 17, 2020—meaning that she missed the 180-notice requirement by 10 days. Under these circumstances, the ITCA requires dismissal of Ms. Stone's claims. *See, e.g., Dodge* ("Compliance with the [ITCA's] notice requirement is a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter how legitimate....").

Ms. Stone advances several arguments in an effort to save her claims. She first argues that she isn't asserting a "claim" against the City, and, even if she were, she isn't seeking "damages." *See Response,* Dkt. 115, at 5. In her words:

> Ms. Stone did not file the affirmative "claim" seeking "damages" against the City, that was done by Mr. Lee. To the contrary, Ms. Stone was simply following up on the defense/indemnification she was owed under the statute, which the City was (for whatever reason) [and] is still refusing to provide.

*Id.*

This argument lacks merit. By the time she filed her cross-claim, Ms. Stone was no longer simply asking the City to provide her with a defense and indemnity. She was instead suing the City based on the City's refusal to defend and indemnify. And she is seeking damages. Her prayer for relief includes a demand that the City reimburse her all for all costs incurred in defending Mr. Lee's complaint. *Answer & Crossclaim*, Dkt. 31, at 16. The costs and attorneys' fees Ms. Stone has incurred (and will incur) incurs in defending this action are the damages that naturally flow from a breach of a duty to defend and indemnify.[4] *Cf. Maxwell v. Hartford Union High School Dist.*, 814 N.W. 2d 484, 496 (Wis. 2012) (explaining that a party aggrieved by an insurer's breach of a duty to defend is entitled to recover damages flowing from that breach, including, among other things, "costs and attorney fees incurred by the insured in defending the suit'")

---

[4] This point is illustrated often in the insurance context, where an insurer wrongly fails to defend its insured. *See, e.g. New England Env't Techs. Corp. v. Am. Safety Risk Retention Grp., Inc.*, 810 F. Supp. 2d 390, 396 (D. Mass. 2011).

(citation omitted).

Ms. Stone argues, in the alternative, that she complied with the ITCA's notice requirement because on May 1, 2020, her attorney emailed the City a copy of Mr. Lee's complaint, along with an inquiry as to whether the City would defend and indemnify her. *See Response,* Dkt. 115, at 13; *see also May 1, 2020 email from Joseph Mallett to James Sullivan and Scott Muir,* Dkt. 114-3. That email cannot possibly be construed as a notice of a claim. At that point, Ms. Stone's claim hadn't yet arisen, as the City had not yet told her it did not intend to defend or indemnify her.

Similarly, Ms. Stone points to a Notice of Tort Claim she filed in November 2019. But that notice didn't alert the City that Ms. Stone intended to sue the City for failure to defend and indemnify her. Nor could it. At that point, Lee had not yet sued Stone, and the City had not yet refused to defend or indemnify Stone. In that earlier notice, Stone complained that Chief William Bones "sent a letter . . . to a member of the public containing personal and protected employment information related to Kayse Stone and also containing incorrect and defamatory information." *Nov. 11, 2019 Notice of Tort Claim,* Dkt. 114-5. Stone says that this earlier notice "involve[ed] the ongoing controversy with Mr. Lee," *Response,* Dkt. 115, at 4, but that is irrelevant. This notice does nothing to alert the City that Ms. Stone intended to sue the City based on a failure to defend and indemnify.

MEMORANDUM DECISION AND ORDER - 12

Ms. Stone's citation to the Idaho Supreme Court's decision in *Van v. Portneuf Medical Center*, 212 P.3d 982 (2009), does not change the analysis. *Van* held that plaintiffs pursuing a claim under Idaho's Whistleblower Act do not need to comply with the ITCA's 180-day notice rule as a prerequisite to suing. *Id.* at 987-88. The court explained that such a claim "is purely a statutory remedy against government employers and there is no reason to assume that the Legislature intended those alleging claims under the statute to have to comply with the notice provisions of the ITCA where the Legislature did not specifically require it." *Id.* at 988.

*Van* is distinguishable because Stone is not pursuing a statutory whistleblower claim; she is instead pursuing a claim that indisputably "arises under" the ITCA. And in the ITCA, the Idaho Legislature directly stated that anyone pursuing such a claim must comply with the ITCA's notice provisions. *See* Idaho Code § 6-906. *Van* is thus inapposite.

Moreover, in *D.A.F. v. Lieteau*, 456 P.3d 193 (Idaho 2019), the Idaho Supreme Court limited some of the more sweeping language in *Van*. The *Van* decision contained the following language, which might be understood as announcing a blanket rule that *all* statutory claims were excused from the ITCA's notice provisions:

Although the . . . the statute establishes "an action separate from"

MEMORANDUM DECISION AND ORDER - 13

> the usual breach of employment contract claim, *the statutory nature of the cause of action does not automatically render it subject to the ITCA. In fact, we hold the opposite to be true*: the whistleblower claim is purely a statutory remedy against governmental employers and there is no reason to assume that the Legislature intended those alleging claims under the statute to have to comply with the notice provision of the ITCA where the Legislature did not specifically require it.

*Van*, 212 P.3d at 988 (emphasis added). But in *Lieteau*, the Idaho Supreme Court held that plaintiffs pursuing statutory tort claims (as opposed to common-law tort claims) nonetheless had to comply with the ITCA's notice provisions. 456 P.3d at 195. And in reversing the trial court, *Lieteau* said this: "*Van's* analysis is relatively unhelpful here as it purports to derive legislative intent regarding the applicability of the ITCA without addressing the plain language of the statute." *Id.* at 198.

The *Lieteau* Court further observed that the whistleblower statute at issue in *Van* "acted as a separate and distinct cause of action as well as a waiver of sovereign immunity outside the scope of the ITCA." *Id.* That was not the case in *Lieteau,* and, likewise, it is not the case here. That is, Stone is not pursuing a claim under a statute that operates as a waiver of sovereign immunity *outside the scope of the* ITCA. Just the opposite; she is pursuing a case that arises under the ITCA. As such, the ITCA's notice requirement applies. Accordingly, she cannot pursue her cross-claims against City of Boise.

Finally, the Court will address the timeliness of the City's motion. As Ms.

Stone notes, the deadline for filing dispositive motions has long since passed, so all pending claims normally would proceed to trial as scheduled, on July 28, 2025. The complication here, however, is that the Idaho Supreme Court has plainly stated that failure to comply with the ITCA's notice provisions is an absolute bar to proceeding with the lawsuit. Under those circumstances, it would be pointless to conduct a trial. Accordingly, the Court will sua sponte extend the dispositive-motion deadline to accommodate the City's motion, finding good cause to do so.

## ORDER

**IT IS ORDERED that** Cross-Defendant the City of Boise's Motion to Dismiss the Cross-Claim Brought by Kayse Stone, converted to a Motion for Summary Judgment, (Dkt. 114) is **GRANTED.**



DATED: May 2, 2025

B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 15